May 26, 2003

Nick Lenzen
324 Oak Meadow Ct.
Schaumburg, Il 60193

Dear Nick:

Legal Advantage Services, Inc. (the "Company") is pleased to provide you (the "Lenzen") with this Agreement regarding engaging you as an independent contractor to act as a Director of Sales for the Company in the for patent graphics, trademark design, trial graphics and other related services (the "Services"). This Agreement shall supersede the Letter of Intent signed between the parties as of May 20, 2003. Until this Agreement is duly executed, the LOI and emails confirming that we are in full agreement shall remain in full force and effect.

1. **Engagement and Duties**. Subject to the terms of this Agreement, the Company hereby agrees to engage Lenzen as its Director of Sales, Midwestern Division, with such authority, power, responsibilities and duties customarily exercised by a person holding such positions in a company of the size and nature of the Company. The "Term" shall be the period beginning on June 1, 2003 and ending December 1, 2005. The Company agrees to upgrade Lenzen to the title of Vice President no later than December 1, 2003 if Lenzen has produced sales of at least 250 pages of patent graphics per each Month (Month shall be from the 1st to the 30th) during the Term up until December 1, 2003. Lenzen's exclusive territories shall be Wisconsin, Illinois, Missouri and Indiana, or as otherwise agreed between the parties (the "Territory") in writing. Lenzen shall use best efforts to enhance the business and increase sales, and to deliver a minimum of 200 pages of patent graphics per month. Lenzen shall guarantee sales of at least 115 billable pages of patent graphics per month. Lenzen shall comply with the policies of the Company that are communicated to him in writing, and shall notify the Company of any offer received for Lenzen's services from a third party. Lenzen acknowledges the importance of confidential treatment of client's patent information and agrees to retain any information in the strictest confidence and in accordance with Company policy. Lenzen shall use best efforts to learn the trial exhibit business and develop a customer base for trial exhibits.

2. **Use of Subsidiary**. Lenzen understands that Patent Intelligence Associates will be a wholly owned subsidiary of Legal Advantage and is being established as a Midwestern regional company for patent drafting and related work. Any business derived through Patent Intelligence Associates, and any rights thereto, are for the sole and exclusive benefit of Legal Advantage.

3. **Performance of Duties**. Lenzen agrees that during the Term, he shall devote his full business time, energies and talents to his position with the Company. The Company shall maintain an 800 number 24x7 for business calls, which shall be answered for Lenzen. The work will flow in the following manner: Lenzen solicits clients. Client's send in work. Lenzen is notified and also supplies instructions and clarifications to designers. First draft must be completed 24 hours prior to client's due date (best efforts). Any revisions must be completed in 48 hours (best efforts). This does not apply to rush jobs.



EXHIBIT B

4. <u>Compensation</u>. The Company shall compensate Lenzen for his services as follows:

   (a) <u>Base Salary</u>. Lenzen shall receive a Base Salary at an annualized rate of Fifty Thousand Dollars ($50,000.00) per year payable in equal monthly installments, on the 1st of each month, beginning on July 1, 2003. Lenzen is guaranteed to receive at least $50,000.00 so long as he delivers 115 billable pages a month, up to the date of termination, and is not otherwise in material breach of this Agreement. This Base Salary is guaranteed for the Initial Term of this Agreement and shall be paid notwithstanding the termination of Lenzen or this Agreement for any reason other than pursuant to 5a or 5b. Subject to the guaranteed Base Salary provision above, the parties acknowledge and agree that Lenzen shall be paid on a monthly basis the greater of either the monthly installment of the Base Salary or the amount of any Commission generated by Lenzen for that month.

   (b) <u>Bonus</u>. Lenzen shall receive a $2,000 signing bonus. Lenzen acknowledges that this bonus has been paid in connection with the signing of the Letter of Intent.

   (c) <u>Commission</u>. Lenzen shall be paid a commission as follows:

   (i)   20% of the Revenue in the Territory on up to 250 pages in a Month.
   (ii)  25% of the Revenue in the Territory attributable to pages above 250 up to 350 pages in a Month.
   (iii) 30% of the Revenue in the Territory attributable to pages above 351 pages in a Month.

   No commission shall be paid on Fish & Neave business, which shall be considered a House Account.

   (d) <u>Benefits</u>. The Company shall pay a $200 stipend each Month on the 1st (beginning July 1st) which shall be used for medical and/or dental insurance by Lenzen. The Company shall permit Lenzen to contribute to any 401(k) retirement plan maintained by the Company. The Company shall permit Lenzen to participate in any Employee Stock Option Plan implemented by the Company at the same level as other market managers or executives as applicable to Lenzen's written title; or the Company shall contribute the equivalent value of the ESOP plan derived by other similarly situated managers/executives to Lenzen by contract. If Lenzen produces sales of greater than 450 pages for any two Months during any three Month period, the Company shall pay car lease expenses on behalf of Lenzen up to $400 per month for the remainder of the Initial Term. <u>Vacation</u>. Lenzen shall be entitled to three weeks' paid vacation, to be earned on a pro rata basis during the Term.

   (e) <u>Expenses</u>. The Company shall reimburse Lenzen for any reasonable business related expenses incurred in accordance with the Company's policies upon presentation of receipts or appropriate records, and shall reimburse Lenzen for business-related cell-phone use.

   (f) <u>Relationship between Parties</u>: The parties intend that Lenzen, in performing services, shall act as an independent contractor. Lenzen agrees to conduct himself in a highly

2

professional manner at all times during the performance of his duties, to adhere to all laws and ethical standards applicable to his profession or occupation and perform all duties in a thorough manner consistent with applicable industry standards. Lenzen is not an agent, servant or employee of the Company, and is not entitled to any benefits provided by Company other than as provided herein, including workman's compensation insurance, unemployment insurance, group life insurance or any other fringe benefit. Company and Lenzen acknowledge that Lenzen shall not disclose any trade secrets or confidential information of former employers or companies for which Lenzen served as a sales representative. <u>It is contemplated by the parties that Lenzen shall become a Vice President of the company before the end of 2003 and an employee if the sales targets in this Agreement are achieved in total.</u>

5. <u>Termination of Engagement</u>. Lenzen's engagement under this Agreement shall terminate automatically (at the option of Legal Advantage) upon the earliest to occur of the following events:

(a) <u>Termination in the Event of Death or Disability</u>. Lenzen's death or disability. Disability shall mean the determination by the Company, that Lenzen is unable to perform the ordinary functions of such Lenzen's position as a result of mental or physical disability.

(b) <u>Termination for Cause</u>. The Company's termination of Lenzen's engagement for Cause, after any required notice is provided and any applicable cure period has passed or immediately if no prior notice is required. For purposes of this Agreement, "Cause" means (1) Lenzen competes with the Company or supports a competitor of the Company, or (2) Lenzen having been convicted of a felony crime other than traffic related.

(c) A Material Breach of this Agreement that is not cured by Lenzen within 10 days after he receives written notice of the breach.

6. <u>Return of Company Property</u>. Upon his termination of engagement with the Company for any reason, Lenzen shall promptly return to the Company any keys, passes, confidential documents or material, or other property belonging to the Company, and to return all writings, files, records, correspondence, notebooks, notes and other documents and things (including any copies thereof) containing confidential information or relating to the business or proposed business of the Company or its subsidiaries or affiliates or containing any trade secrets relating to the Company or its subsidiaries or affiliates. Lenzen agrees to represent in writing to the Company upon termination of engagement that he has complied with the foregoing provisions of this Section 7.

7. <u>Noncompetition; non-solicitation</u>. Subject to Company's performance of the guaranteed payment obligation in Paragraph 4(a) above, during the Term and for a period of six (6) months following termination, Lenzen shall not engage in, render services to, or have an interest in, directly or indirectly, any Competing Business, including, without limitation, as an owner, partner, director, trustee, officer, contractor, consultant, or advisor, provided, however, that Lenzen may, during the period defined above, accept a role with a Competing Business where his entire role is with a business segment or geographic region that does not compete with

3

the Company. For a period of six (6) months following the termination date, Lenzen shall not be permitted to solicit, contact or work with any clients of the Company with whom Lenzen had dealt with during the Term. For purposes of this Agreement, the term "Competing Business" means any person or entity which engages in, owns, operates, or provides patent graphics, trademark illustrations or litigation support graphics of the sort provided by the Company.

8. **Reasonable Restrictions.** Lenzen acknowledges and agrees that the covenants and restrictions set forth in Section 7 are reasonable in scope and duration and are essential to the preservation of the Company's business and proprietary interests, and that the enforcement of such paragraphs will not in any manner preclude Lenzen from becoming gainfully employed and continuing to provide a standard of living for himself and his family of the sort to which he and they have become accustomed. For purposes of Sections 6 and 7, Company shall include the Company's subsidiaries and affiliates.

9. **Survival.** This Agreement shall terminate on December 1, 2005, or sooner upon termination of Lenzen's engagement as provided herein. Notwithstanding the foregoing sentence, Sections 5, 6 and 7 shall survive any termination of this agreement provided the guaranteed salary in section 4(a) is paid.

10. **Lenzen Representations.** Lenzen represents that he is not subject to any current restrictive covenants or any other restrictions that would prevent him from entering into this Agreement or providing any services for the Company, or otherwise impair or interfere with the Company's rights under this Agreement or the performance of his duties. Lenzen represents that he is not currently under any agreement or relationship with any other firm in the patent graphics business.

11. **Remedies.** Lenzen acknowledges and agrees that the Company would be irreparably harmed by any violation of any provision of Sections 6 or 7, and that the Company shall therefore be entitled to, in addition to any other remedies available to it for such violation or threatened violation, obtain an injunction, temporary restraining order, or other equivalent relief restraining Lenzen from any actual or threatened violation of such sections.

12. **Attorney's Fees.** In any action to enforce this Agreement, each party shall pay its own attorney's fees.

13. **Severability.** The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement, and this Agreement will be construed as if such invalid or unenforceable provision were omitted (but only to the extent that such provision cannot be appropriately reformed or modified) Any provision deemed to be overbroad shall be reformed or modified ("blue-penciled") so that it is enforceable to the maximum extent permitted by law.

14. **Notices.** Notices and all other communications provided for in this Agreement shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid, or prepaid overnight courier or by facsimile (delivery shall be deemed to have been given upon facsimile confirmation) or upon hand delivery to the parties at

the addresses set forth below (or such other addresses as shall be specified by the parties by like notice):

    (a) If to the Company:

Legal Advantage Services, Inc.
2300 M Street
Washington, DC 20037
Attention: John Jones, Esq.
General Counsel
Fax: (800) 804-4220

    (b) If to Lenzen:
Nick Lenzen
324 Oak Meadow Ct.
Schaumburg, Il 60193



15. **Amendments; Waivers.** This Agreement may not be modified, amended or terminated except in writing, signed by both parties. Either party may waive the other party's compliance with any provision of this Agreement, but such waiver shall be effective only if set forth in writing by both parties. Any waiver of a particular provision in any one or more instance shall not operate as a waiver of any subsequent compliance or failure to comply with that or any provision of this Agreement. Furthermore, any party's failure to exercise or delay in exercising any right, remedy or power hereunder, in one or more instances, shall not preclude or waive any subsequent exercise of such right, remedy or power.

16. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Company and its successors and assigns and upon Lenzen and his heirs, executors, legatees and personal representatives. Lenzen shall not assign any of his interest in, or delegate any of his obligations under, this Agreement without the Company's prior written consent.

17. **Applicable Law.** This Agreement shall be governed by the laws of the State of Illinois, without regard to any conflicts of law provision thereof.

18. **Entire Agreement.** Except as otherwise noted herein, this Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior and contemporaneous agreements, if any, between the parties relating to the subject matter hereof, including the Letter Agreement, dated May 20, 2003.

19. **Counterparts.** This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.

LENZEN:

*[signature]*
Nick Lenzen

Dated: 6-4-03

LEGAL ADVANTAGE SERVICES, INC.

By: *[signature]*
Name: N. DEAN NASITIR
Title: MANAGING DIRECTOR

Dated: June 6, 03

6