**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NICHOLAS J. LENZEN,<br>     Plaintiff. | ) <br> ) <br> ) |
|      v. | ) <br> ) |
| LEGAL ADVANTAGE, LLC,<br>     Defendant, | ) <br> )    No. 07 C 6154 <br> ) |
|     and | )    Judge Mark R. Filip <br> ) |
| LEGAL ADVANTAGE, SERVICES, INC.,<br>     Defendant. | )    Magistrate Judge Morton Denlow <br> ) <br> ) |
| ———————————————— | ) <br> ) |
| LEGAL ADVANTAGE, LLC,<br>     Counterclaim plaintiff, | )    Jury Trial Demanded <br> ) <br> ) |
|      v. | ) <br> ) |
| NICHOLAS J. LENZEN,<br>     Counterclaim defendant. | ) <br> ) <br> ) |

**LEGAL ADVANTAGE, LLC'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT
AND COUNTERCLAIMS OF LEGAL ADVANTAGE, LLC**

Defendant Legal Advantage, LLC ("Legal Advantage") answers as follows to the

Amended Complaint of Plaintiff, Nicholas J. Lenzen ("Lenzen"):

**THE PARTIES**

"1.     Plaintiff Nicholas J. Lenzen (hereinafter "Lenzen") is an individual residing at 324 Oak
Meadow Court, Schaumburg, Illinois, 60193, which is located in Cook County, Illinois."

     **ANSWER:**     Legal Advantage admits the allegations of Paragraph 1.

"2.     Lenzen is a citizen of Illinois."

     **ANSWER:**     Legal Advantage admits the allegations of Paragraph 2.

"3.    Upon information and belief, Defendant Legal Advantage, LLC (hereinafter "LA, LLC") is a limited liability company formed and existing under the laws of Florida, and has a principal place of business located at 4330 East West Highway, Suite 304, Bethesda, Maryland 20814."

<u>**ANSWER:**</u>    Legal Advantage admits the allegations of Paragraph 3.

"4.    Upon information and belief, the members of LA, LLC are individuals named Mirza Baig and Akbar Sharfi. Upon information and belief, Mirza Baig resides at 6812 Delaware Street, Chevy Chase, Maryland 20815, and thus Baig is a citizen of Maryland. Upon information and belief, Akbar Sharfi resides at 7210 Pioneer Lakes Circle, West Palm Beach, Florida 33413, and thus Sharfi is a citizen of Florida. LA, LLC is a citizen of Florida and Maryland. LA, LLC is not a citizen of Illinois. Upon representations by Defendant LA, LLC through counsel, no members of LA, LLC are citizens of Illinois as of the date of the filing of the Complaint, October 31, 2007."

<u>**ANSWER:**</u>    Legal Advantage denies that the members of Legal Advantage are Mirza Baig and Akbar Sharfi.  Legal Advantage admits that no members of Legal Advantage are citizens of Illinois as of the date of October 31, 2007.  Legal Advantage further admits that Mirza Baig resides at 6812 Delaware Street, Chevy Chase, Maryland 20815.  Legal Advantage denies that Akbar Sharfi's current residence is 7210 Pioneer Lakes Circle, West Palm Beach, Florida 33413.

"5.    Upon information and belief, Defendant Legal Advantage Services, Inc. (hereinafter 'LAS, Inc.') is a corporation formed and existing under the laws of California and has a principal place of business located at 11600 Washington Place, Suite 105, Los Angeles, California 90066."

<u>**ANSWER:**</u>    Legal Advantage has insufficient knowledge or information to admit or deny the allegations of Paragraph 5 and accordingly, denies these allegations.

"6.    LAS, Inc. is a citizen of California. LAS, Inc. is not a citizen of Illinois."

<u>**ANSWER:**</u>    Legal Advantage has insufficient knowledge or information to admit or deny the allegations of Paragraph 6, and accordingly, denies these allegations.

"7.    Upon information and belief, Defendant LA, LLC is a successor in interest to Defendant LAS Inc."

<u>**ANSWER:**</u>    Legal Advantage denies the allegations of Paragraph 7.

"8.    Upon information and belief, Defendant LA, LLC purchased, acquired, merged with, or otherwise succeeded in interest to Defendant LAS, Inc."

**ANSWER:**    Legal Advantage admits that it purchased the assets of LAS, Inc. and as

part of that asset purchase agreement, was assigned certain rights by LAS, Inc.  Legal Advantage

denies the remainder of the allegations of Paragraph 8.

## JURISDICTION AND VENUE

"9.    This is a civil action for breach of contract, statutory violations of Illinois law, injunctive relief, and damages. This action arises in part under common law breach of contract and Illinois state statutes. This action also arises in part under 28 U.S.C. §2201 for the purpose of determining questions of actual controversy.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Jurisdiction is also conferred in part based upon 28 U.S.C. § 1367."

**ANSWER:**    Legal Advantage admits the allegations of Paragraph 9 insofar as it relates

to the allegations made in Lenzen's Amended Complaint as for jurisdictional requirements.

Legal Advantage denies that any of the counts of Lenzen's action have merit.

"10.    Upon information and belief, Defendants are and have in the past conducted business in Illinois, and in this Judicial District as discussed in more detail herein. Moreover, Defendant LA, LLC maintains an office and regularly transacts business in Illinois.  Defendant LAS, Inc. has in the past maintained an office and regularly transacted business in Illinois. The contracts referred to herein were executed and performed in Illinois. Requiring Defendants to respond to this action will not violate due process.  Defendants are subject to the personal jurisdiction of this Court and are amenable to service of process pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209, and Rules 4(e) and 4(h) of the Federal Rules of Civil Procedure."

**ANSWER:**    Legal Advantage admits that it has conducted and is conducting business

in Illinois and is conducting business in this Judicial District.  Legal Advantage admits that it

maintains an office and regularly conducts business in Illinois.  Legal Advantage admits the

Service Agreement, which is attached to the Complaint as Exhibits B-E, was executed and

performed in Illinois.  Legal Advantage denies any characterization that the Service Agreement

was performed exclusively within Illinois.  Legal Advantage admits that it is subject to the

personal jurisdiction of this Court and is amenable to service of process pursuant to the Illinois

long-arm statute, 735 ILCS 5/2-209 and Rules 4(e) and 4(h) of the Federal Rules of Civil

Procedure. Legal Advantage has insufficient knowledge or information to admit or deny the

remaining allegations of Paragraph 10 pertaining to Defendant LAS, Inc. and accordingly, denies

these allegations.

"11.    Venue lies in this district pursuant to 28 U.S.C. §§ 1391(a) and (c)."

> **ANSWER:**    Legal Advantage admits the allegations of Paragraph 11.

## GENERAL ALLEGATIONS

"12.    Plaintiff Lenzen is an independent contractor and salesperson engaged in the business of selling, among other things, legal support services including patent graphic and drafting services. Lenzen has engaged in such services for the past seven years."

> **ANSWER:**    Legal Advantage admits the allegations of the first sentence of Paragraph

12. Legal Advantage has insufficient knowledge or information to admit or deny the allegations

of the second sentence of Paragraph 12 and accordingly, denies these allegations.

"13.    Defendant LAS, Inc. is currently and/or was in the past in the business of providing legal support services, including patent graphic and drafting services to a variety of customers including law firms, corporations, and other entities."

> **ANSWER:**    Legal Advantage has insufficient knowledge or information to admit or

deny the allegations of Paragraph 13 and accordingly, denies these allegations.

"14.    Defendant LA, LLC is and/or was in the past in the business of providing legal support services, including patent graphic and drafting services to a variety of customers including law firms, corporations, and other entities."

> **ANSWER:**    Legal Advantage admits the allegations of Paragraph 14.

"15.    In late 2002 and the beginning of 2003, Defendant LAS, Inc. engaged in discussions to retain and contract with Plaintiff Lenzen for a business relationship in which Lenzen would act as a sales person for LAS, Inc. relating to selling legal support services including patent graphic and drafting services. After discussions and negotiations, LAS, Inc. and Lenzen reached an agreement in principal, which was memorialized in a Letter of Intent dated May 20, 2003, a copy of which is attached hereto as Exhibit A. Defendant LAS, Inc. drafted, accepted and executed the Letter of Intent."

**ANSWER:**     Legal Advantage admits that Exhibit A to the Amended Complaint purports to be a Letter of Intent between Lenzen and LAS, Inc.  Legal Advantage has insufficient knowledge and information to admit or deny the remainder of the allegations of Paragraph 15 and accordingly, denies these allegations.

"16.     On or about May 26, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a Service Agreement engaged Lenzen as an independent contractor salesperson for selling legal support services provided by LAS, Inc. to various customers. A copy of the Service Agreement is attached hereto as Exhibit B. Defendant LAS, Inc. drafted, accepted and executed the Service Agreement."

**ANSWER:**     Legal Advantage admits that Exhibit B to the Amended Complaint purports to be an agreement between Lenzen and LAS, Inc, setting forth the relationship between Lenzen and LAS, Inc.  Legal Advantage has insufficient knowledge and information to admit or deny the remainder of the allegations of Paragraph 16 and accordingly, denies these allegations.

"17.     On or about June 9, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a First Amendment to the Service Agreement, which modified and clarified certain terms and conditions therein. A copy of the First Amendment is attached hereto as Exhibit C.  Defendant LAS, Inc. drafted, accepted and executed the First Amendment."

**ANSWER:**     Legal Advantage admits that Exhibit C to the Amended Complaint purports to be an Addendum to an agreement between Lenzen and LAS, Inc. modifying and clarifying certain terms of that agreement.  Legal Advantage has insufficient knowledge and information to admit or deny the remainder of the allegations of Paragraph 17 and accordingly, denies these allegations.

"18.     On or about June 16, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a Second Amendment to the Service Agreement, which modified and clarified certain terms and conditions therein. A copy of the Second Amendment is attached hereto as Exhibit D.  Defendant LAS, Inc. drafted, accepted and executed the Second Amendment."

**ANSWER:**     Legal Advantage admits that Exhibit D to the Amended Complaint purports to be a Second Addendum to an agreement between Lenzen and LAS, Inc. modifying and clarifying certain terms of the that agreement and a prior addendum to that agreement.  Legal

Advantage has insufficient knowledge and information to admit or deny the remainder of the

allegations of Paragraph 18 and accordingly, denies these allegations.

"19.    On or about February 15, 2005, Defendant LAS, Inc. and Plaintiff Lenzen executed a Third Amendment to the Service Agreement, which modified certain terms and conditions therein. A copy of the Third Amendment is attached hereto as Exhibit E. Defendant LAS, Inc. drafted, accepted and executed the Third Amendment."

        **ANSWER:**    Legal Advantage admits that Exhibit E to the Amended Complaint

purports to be an Amendment to an agreement between Lenzen and LAS, Inc.  Legal Advantage

has insufficient knowledge and information to admit or deny the remainder of the allegations of

Paragraph 19 and accordingly, denies these allegations.

"20.    The Service Agreement and the Amendments thereto are governed by Illinois law."

        **ANSWER:**    Legal Advantage admits Exhibit B, which Lenzen has characterized as the

"Service Agreement" contains a provision that Exhibit B is to be governed by the laws of the

State of Illinois.

"21.    Upon information and belief, Defendant LA, LLC was formed and incorporated on or about April 19, 2005."

        **ANSWER:**    Legal Advantage admits the allegations of Paragraph 21.

"22.    Upon information and belief, in or around April 2005, Defendant LA, LLC succeeded in interest to Defendant LAS, Inc."

        **ANSWER:**    Legal Advantage denies the allegations of Paragraph 22.

"23.    As the successor in interest to LAS, Inc., Defendant LA, LLC assumed all of the debts, liability, contracts, and other obligations of Defendant LAS, Inc."

        **ANSWER:**    Legal Advantage denies the allegations of Paragraph 23.

<u>**COUNT ONE**</u>

<u>**BREACH OF CONTRACT**</u>

"24.    Plaintiff hereby incorporates paragraphs 1 through 23 of the Complaint, as if fully set forth herein in their entirety."

**ANSWER:**     Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 23 of the Complaint.

"25.     One or more agreements exist between Plaintiff Lenzen and Defendants LAS, Inc. and LA, LLC, including the Service Agreement and the Amendments thereto."

**ANSWER:**     Legal Advantage admits the allegations of Paragraph 25.

"26.     At all times relevant hereto, Plaintiff Lenzen performed all of the obligations required of him under the Service Agreement and the Amendments thereto."

**ANSWER:**     Legal Advantage denies the allegations of Paragraph 26.

"27.     Pursuant to the Service Agreement and the Amendments, Defendant LAS, Inc. and its successor Defendant LA, LLC were obligated by the terms therein to perform certain duties and make certain payments as outlined therein."

**ANSWER:**     Legal Advantage admits that pursuant to a written agreement between

LAS, Inc. and Lenzen, which was assigned by LAS, Inc. to Legal Advantage, Legal Advantage

had certain obligations to Lenzen following Legal Advantage's purchase of the assets of LAS,

Inc.  Legal Advantage denies the remainder of allegations of Paragraph 27.

"28.     Defendants LAS, Inc. and LA, LLC, have breached the Service Agreement and the Amendments thereto by failing to perform many of their duties and obligations there under. Such breaches include, but are not limited to, failing to make commission payments due under the contract, failing to provide benefits owed to Lenzen under the contract (leased company car, paid vacations, stock option plan, retirement plan, etc.), failing to make timely base salary payments under the contract, failing to pay expenses due Lenzen under the contract, failing to issue stock to Lenzen, failing to compensate Lenzen for his stock in LAS, Inc. when it was sold and/or transferred to LA, LLC, and other failures."

**ANSWER:**     Legal Advantage denies the allegations of Paragraph 28.

"29.     As a direct and proximate result of breaches by Defendants LAS, Inc. and LA, LLC, Plaintiff Lenzen has sustained damages."

**ANSWER:**     Legal Advantage denies the allegations of Paragraph 29.

## COUNT TWO

### VIOLATIONS OF ILLINOIS SALES REPRESENTATIVE ACT

"30.     Plaintiff hereby incorporates paragraph 1 through 29 of the Complaint, as if fully set forth herein in their entirety."

**ANSWER:**     Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 29 of the Complaint.

"31.     From 2003 through the present, Plaintiff Lenzen was engaged as a salesperson by Defendant LAS, Inc. and its successor in interest, Defendant LA, LLC."

**ANSWER:**     Legal Advantage denies the allegations of Paragraph 31, except that Legal

Advantage admits that it engaged Lenzen as a salesperson from approximately May 2005

through October 30, 2007.

"32.     During the course of that relationship, Lenzen was a sales representative as defined in 820 ILCS 120/1(4)."

**ANSWER:**     Legal Advantage admits that during the course of its engagement of

Lenzen, Lenzen was a sales representative as defined in 820 ILCS 120/1(4).  Legal Advantage

has insufficient knowledge or information to admit or deny the  allegations of Paragraph 32

insofar as it relates to any time period prior to the time that Legal Advantage engaged Lenzen,

and accordingly, denies these allegations.

"33.     During the course of that relationship, Defendants LAS, Inc. and LA, LLC were principals as defined in 820 ILCS 120/1(3)."

**ANSWER:**     Legal Advantage admits that during the course of its engagement of

Lenzen, Legal Advantage was a principal as defined in 820 ILCS 120/1(3).  Legal Advantage

denies that it was a principal for any time prior to then.  Legal Advantage has insufficient

knowledge or information to admit or deny the allegations of Paragraph 33 insofar as it relates to

any time period prior to the time that Legal Advantage engaged Lenzen, and accordingly, denies

these allegations.

8

"34.    Pursuant to the one or more agreements between Plaintiff Lenzen and Defendants LAS, Inc. and LA, LLC, Lenzen performed and provided sales services to Defendants LAS, Inc. and LA, LLC. In exchange therefore, Defendants LAS, Inc. and LA, LLC were required to make certain commission payments to Plaintiff Lenzen."

**ANSWER:**    Legal Advantage admits that pursuant to a written agreement between

LAS, Inc. and Lenzen, which was assigned by LAS, Inc. to Legal Advantage, Legal Advantage

had certain obligations to Lenzen following Legal Advantage's purchase of the assets of LAS,

Inc. to make certain payments to Lenzen in exchange for providing sales services to Legal

Advantage.  Legal Advantage denies the remainder of allegations of Paragraph 2.

"35.    The commission payments due Lenzen fall within the definition of 820 ILCS 120/1(1)."

**ANSWER:**    Legal Advantage admits that certain commission payment described in the

written agreement executed between Lenzen and LAS, Inc. would fall within the definition of

820 ILCS 120/1(1), but denies that any commission payments are due Lenzen.

"36.    Defendants LAS, Inc. and LA, LLC failed to make commission payments due and owing to Plaintiff Lenzen in derogation of their obligations under the relevant agreements."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 36.

"37.    The failure by Defendants LAS, Inc. and LA, LLC to make certain commission payments to Plaintiff Lenzen constitute violations of the Illinois Sales Representative Act, 820 ILCS 120/3."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 37.

## **COUNT THREE**

### **DECLARATORY JUDGMENT THAT LENZEN HAS IMPROPERLY NOT BEEN ISSUED STOCK IN LAS, INC., THAT LENZEN OWNS THREE PERCENT OF OUTSTANDING STOCK OF LAS, INC. AND THAT LENZEN OWNS A PROPORTIONATE SHARE OF OWNERSHIP (THREE PERCENT) IN LA, LLC.**

"38.    Plaintiff hereby incorporates paragraph 1 through 38 of the Complaint, as if fully set forth herein in their entirety."

**ANSWER:**    Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 37 of the Complaint.

"39.    In accordance with the Third Amendment (Exhibit E) to the Service Agreement (Exhibit B), Lenzen was to be issued certain stock and associated ownership interest in Defendant LAS, Inc."

   **ANSWER:**    Legal Advantage has insufficient knowledge or information to admit or deny the allegations of Paragraph 39 and accordingly, denies these allegations.

"40.    No stock in LAS, Inc. was ever issued to Lenzen."

   **ANSWER:**    As this was a matter between LAS, Inc. and Lenzen, Legal Advantage has insufficient knowledge or information to admit or deny the allegations of Paragraph 39 and accordingly, denies these allegations.

"41.    Lenzen has made repeated demands to LAS, Inc. and LA, LLC that such stock be issued."

   **ANSWER:**    Legal Advantage admits the allegations of Paragraph 41.

"42.    No payment has ever been made to Lenzen for his ownership interest in LAS, Inc."

   **ANSWER:**    Legal Advantage admits the allegations of Paragraph 42 to the extent that Legal Advantage has made no payments to Lenzen for his alleged ownership interest in LAS, Inc., but denies that Lenzen was entitled to any such payment from Legal Advantage.  As this was a matter between LAS, Inc. and Lenzen, Legal Advantage has insufficient knowledge or information to admit or deny the allegations of Paragraph 42 relating to any payments made to Lenzen by LAS, Inc. and accordingly, denies these allegations.

"43.    No payment has ever been made to Lenzen for his stock in LAS, Inc."

   **ANSWER:**    Legal Advantage admits the allegations of Paragraph 43 to the extent that Legal Advantage has made no payments to Lenzen for his alleged stock in LAS, Inc., but denies that Lenzen was entitled to any such payment from Legal Advantage.  As this was a matter between LAS, Inc. and Lenzen, Legal Advantage has insufficient knowledge or information to

admit or deny the allegations of Paragraph 43 relating to any payments made to Lenzen by LAS, Inc. and accordingly, denies these allegations.

"44.    Lenzen never sold, transferred, assigned or relinquished his ownership interest in Defendant LAS, Inc."

**ANSWER:**    Legal Advantage has insufficient knowledge or information to admit or

deny the allegations of Paragraph 44 and accordingly, denies these allegations.

"45.    In or around April 2005, LAS, Inc. was purportedly sold, transferred, and/or merged with Defendant LA, LLC."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 45.

"46.    At such time, and at all times thereafter, Lenzen's ownership interest in LAS, Inc. was never purchased."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 46.

"47.    As such, Lenzen retains ownership of his ownership interest in LAS, Inc. and the associated proportionate share of ownership in its successor LA, LLC."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 47.

"48.    Lenzen is entitled to a declaratory judgment that he is and was an owner of three percent of all outstanding stock in LAS, Inc., and that as a result of such stock and attendant ownership rights never having been purchased from him, Lenzen is a three-percent owner of LA, LLC."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 48.

**COUNT FOUR**

**REFORMATION OF CONTRACT DUE TO MUTUAL MISTAKE**

"49    Plaintiff hereby incorporates paragraph 1 through 48 of the Complaint, as if fully set forth herein in their entirety."

**ANSWER:**    Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 48 of the Complaint.

"50.    In contracting to retain Lenzen's services, LAS, Inc. and Lenzen negotiated and came to an agreement on a number of matters relating to the relationship between them."

**ANSWER:**    Legal Advantage has insufficient knowledge and information to admit or

deny the allegations in Paragraph 50 and accordingly, denies these allegations.

"51.    Among such matters, Lenzen and LAS, Inc. negotiated and agreed upon a commission structure. The actual agreement between Lenzen and LAS, Inc. was that if Lenzen generated monthly sales of 250 sheets of drawings or less, he would be paid a commission of 20% of the monthly revenue received from such sales (less Lenzen's monthly base salary of $4,166.67); if Lenzen generated monthly sales between 251 and 350 sheets of drawings, he would be paid a commission of 25% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67); and if Lenzen generated monthly sales greater than 350 sheets of drawings, he would be paid a commission of 30% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67)."

**ANSWER:**    Legal Advantage has insufficient knowledge and information to admit or

deny the allegations in Paragraph 51 and accordingly, denies these allegations.

"52.    This agreement as to sales commissions is reflected in paragraphs 4(A) and 4(B) of the Letter of Intent (Exhibit A)."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 52.

"53.    Lenzen and LAS, Inc. executed the Service Agreement (Exhibit B). In doing so, a mistake was made in the drafting of the Service Agreement as it relates to the commission structure to be paid to Lenzen. As a result of the mistake, the commission structure expressed in paragraph 4(c) of the Service Agreement is in error and does not reflect the true agreement of the parties."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 53.

"54.    From the date of execution of the Service Agreement to the present, the parties have operated in accordance with the correct agreed upon commission structure, and not upon the mistaken memorialization of the commission structure in paragraph 4(c) of the Service Agreement. As such, in months when Lenzen generated sales in excess of 350 sheets of drawings, Defendants LAS, Inc. and LA, LLC paid to Lenzen commissions of 30% of the gross monthly revenue received from such sales, less Lenzen's monthly base salary of $4,166.67."

**ANSWER:**    Legal Advantage admits that Lenzen was paid 30% of the gross monthly

revenue received from sales in excess of 350 sheets of drawings, but denies that these were his

earned commissions per month or that Legal Advantage was contractually obligated to pay 30%

of the gross monthly revenues to Lenzen, as this was a point of contention between Lenzen and

Legal Advantage since June 2005.  Legal Advantage denies the remaining allegations in

Paragraph 54 including any inference the Service Agreement or any agreement obligated Legal

Advantage to pay Lenzen commissions of 30% of the gross monthly revenue received from sales

in excess of 350 sheets of drawings.

"55.    Such payments evidence Defendants compliance with the true agreed upon commission structure which was mistakenly memorialized in the Service Agreement."

　　　　**ANSWER:**    Legal Advantage denies the allegations of Paragraph 55.

"56.    The parties operated under the true agreed upon commission structure for over four (4) years, and never operated under the mistakenly memorialized commission structure in the Service Agreement."

　　　　**ANSWER:**    Legal Advantage denies the allegations of Paragraph 56.

"57.    Despite clear evidence that the parties have operated under an incorrectly memorialized understanding as to commission to be paid to Lenzen, Defendant LA, LLC has recently indicated that the commissions paid to Lenzen in the past have been overpayments, that such overpayments were made erroneously, and that the language of the Service Agreement is the commission structure that should be followed. Moreover, Defendant LA, LLC has threatened Plaintiff Lenzen with actions to recover what they claim to be overpayments. Thus, an actual controversy exists as to the mistake of fact described herein and embodied in paragraph 4(c) of the Service Agreement."

　　　　**ANSWER:**    Legal Advantage admits that it considers that the payment to Lenzen of

30% of the gross monthly revenue received from sales is an overpayment to Lenzen to which he

was not entitled to receive and that the language of the Service Agreement is the commission

structure that should be followed.  Legal Advantage further admits that an actual controversy

over this issue exists and that Legal Advantage believes that it has a legal right to recover these

overpayments.  Legal Advantage denies the remaining allegations contained in Paragraph 57.

"58.    As a result of the mistake, paragraph 4(c) of the Service Agreement contains an incorrect and mistaken expression of the parties true agreement as to commissions to be paid to Lenzen, and should be reformed so as to indicate and express the parties true agreement as to commission structure."

　　　　**ANSWER:**    Legal Advantage denies the allegations of Paragraph 58.

## COUNT FIVE

## DECLARATORY JUDGMENT OF CORRECT APPLICABLE COMMISSION RATE

"59.    Plaintiff hereby incorporates paragraph 1 through 58 of the Complaint, as if fully set forth herein in their entirety."

**ANSWER:**    Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 58 of the Complaint.

"60.    As a result of the mistake in the Service Agreement, the commission rate expressed in paragraph 4(c) therein is incorrect."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 60.

"61.    The actual agreement between Lenzen and LAS, Inc. was that if Lenzen generated monthly sales of 250 sheets of drawings or less, he would be paid a commission of 20% of the monthly revenue received from such sales (less Lenzen's monthly base salary of $4,166.67); if Lenzen generated monthly sales between 251 and 350 sheets of drawings, he would be paid a commission of 25% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67); and if Lenzen generated monthly sales greater than 350 sheets of drawings, he would be paid a commission of 30% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67)."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 61.

"62.    An actual controversy exists between Lenzen and Defendant LA, LLC regarding the correct commission to be applied under the Service Agreement, and the mistake memorialized in paragraph 4(c) therein."

**ANSWER:**    Legal Advantage admits that an actual controversy exists between Lenzen

and Legal Advantage regarding the correct commission to be applied under the Service

Agreement.  Legal Advantage denies the remaining allegations of Paragraph 62.

"63.    Lenzen is entitled to a declaratory judgment that the agreement expressed in paragraph 61 is the true agreement between the parties as to commissions to be paid to Lenzen, and that all such commissions remaining under the Service Agreement be paid in accordance with such commission structure."

**ANSWER:**    Legal Advantage denies the allegations of Paragraph 63.

<u>**COUNT SIX**</u>

<u>**DECLARATORY JUDGMENT THAT NON-COMPETITION CLAUSE IN SERVICE
AGREEMENT IS UNENFORCEABLE**</u>

"64.    Plaintiff hereby incorporates paragraph 1 through 63 of the Complaint, as if fully set forth
herein in their entirety."

    **<u>ANSWER:</u>**    Legal Advantage repeats and incorporates by reference its answers to

Paragraphs 1 through 63 of the Complaint.

"65.    Lenzen and LAS, Inc. entered into the Service Agreement (Exhibit B) and the
Amendments thereto (Exhibits C, D, and E) on the dates aforementioned."

    **<u>ANSWER:</u>**    Legal Advantage admits that Exhibit B purports to be an agreement

between Lenzen and LAS, Inc. and Exhibits C, D, and E purport to be addendums or

amendments to that agreement.  Legal Advantage has insufficient knowledge and information to

admit or deny the allegations in Paragraph 65 pertaining to the precise date on which Exhibits B

through E were executed or, in the case of Exhibits D and E, whether they were ever executed by

LAS, Inc. and accordingly, denies the remaining allegations of Paragraph 65.

"66.    As a result of the multiple breaches of the Sales Agreement and the Amendments thereto
by Defendant LAS, Inc. and its successor LA, LLC, the non-competition clause in paragraph 7 of
the Service Agreement is void and unenforceable."

    **<u>ANSWER:</u>**    Legal Advantage denies the allegations of Paragraph 66.

"67.    The non-competition clause contained in paragraph 7 of the Service Agreement is vague,
overly broad, an improper restraint on trade, and violates Illinois public policy."

    **<u>ANSWER:</u>**    Legal Advantage denies the allegations of Paragraph 67.

"68.    As a result, such non-competition clause is void and unenforceable."

    **<u>ANSWER:</u>**    Legal Advantage denies the allegations of Paragraph 68.

"69.    Lenzen is entitled to an order declaring that the non-competition clause in the Service
Agreement and Amendment thereto is void and unenforceable."

    **<u>ANSWER:</u>**    Legal Advantage denies the allegations of Paragraph 69.

"70.   Despite the fact that the non-competition clauses in the Service Agreement and Amendment thereto are void and unenforceable, Defendants have incorrectly made multiple statements, threats, and comments to Lenzen that the non-competition clauses remain enforceable."

**ANSWER:**   Legal Advantage admits that it considers the restrictive covenants

contained in Exhibit B to be enforceable, but denies the remainder of the allegations of

Paragraph 70.

"71.   Upon information and belief, Defendants LAS, Inc. and LA, LLC have in the past and will in the future continue to make comments to third parties that Lenzen is under certain obligations pursuant to the non-competition clauses, when in fact, Lenzen is not."

**ANSWER:**   Legal Advantage denies the allegations of Paragraph 71.

"72.   As such, an actual controversy exists between the parties regarding the enforceability of the non-competition clause of the Service Agreement."

**ANSWER:**   Legal Advantage denies the allegations of Paragraph 72.

"73.   Lenzen is entitled to an order declaring that the Defendants and their respective officers, members, employees, agents, servants, and attorneys, are prohibited from making any claims or allegations to third parties that Plaintiff Lenzen is prohibited from performing sales services pursuant to the non-competition clauses in the Service Agreement and the Amendment thereto."

**ANSWER:**   Legal Advantage denies the allegations of Paragraph 73.

## AFFIRMATIVE AND OTHER DEFENSES

Legal Advantage denies all allegations of alleged wrongdoing by it and further denies all

allegations which otherwise have not been expressly admitted in this Answer.  Additionally,

Legal Advantage asserts the following affirmative defenses.  Legal Advantage does not assume

the burden of proof on these defenses where substantive law provides otherwise.

1.     Plaintiff's claims fail to state a claim upon which relief can be granted.

2.     Plaintiff's claims are barred by the doctrine of unclean hands.

3.     Plaintiff's claims are barred by breach of contract.

4.      Plaintiff has received all payments to which Plaintiff was entitled to receive under his agreement with Legal Advantage.

WHEREFORE, Legal Advantage respectfully prays that judgment be entered in its favor and against Plaintiff and that it be awarded the costs of this suit, and such other relief as this Court deems just and proper.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Legal Advantage, LLC ("Legal Advantage") complains of the Plaintiff and Counterclaim Defendant Nicholas J. Lenzen ("Lenzen") as follows:

### NATURE OF THE ACTION

1.      This is an action for damages arising out of Lenzen's unjust enrichment and breach of contract resulting from his engagement with Legal Advantage.

### THE PARTIES

2.      Counterclaim Plaintiff Legal Advantage is a limited liability company formed and existing under laws of Florida, with a principal place of business located at 4330 East West Highway, Suite 304, Bethesda, Maryland, 20814.

3.      Legal Advantage is a citizen of Florida and Maryland, and is not a citizen of Illinois.

4.      Counterclaim Defendant Lenzen is an individual residing at 324 Oak Meadow Court, Schaumburg, Illinois, 60193.

5.      Lenzen is a citizen of Illinois.

### JURISDICTION AND VENUE

6.      Jurisdiction over the counterclaim is based on 28 U.S.C. § 1367, as the counterclaims are so related to claims in the original action that they form part of the same case

or controversy.  In addition, inasmuch as there is diversity of citizenship between the parties and more than $75,000.00, exclusive of interest and costs, in controversy, jurisdiction is also conferred in part based upon 28 U.S.C. § 1332.

7.     A substantial part of the events or omissions giving rise to the Counterclaim Plaintiff's claims occurred within the Northern District of Illinois, as set forth below.  Venue is appropriate in this district under 28 U.S.C. § 1391(a), as Counterclaim Defendant resides in this district and a substantial part of the events giving rise to the claim at issue occurred in this district.

**FACTS**

8.     On or around May 16, 2005, Legal Advantage purchased the assets of Legal Advantage Services, Inc. ("LAS, Inc.").  As part of the asset purchase agreement between Legal Advantage and LAS, Inc., LAS, Inc. assigned certain contracts to which LAS, Inc. was a party to Legal Advantage.  One of the contracts assigned by LAS, Inc. to Legal Advantage as part of the asset purchase agreement was the agreement signed by Lenzen on June 4, 2003 and by LAS, Inc. on June 6, 2003, governing the relationship between Lenzen and LAS, Inc.  This agreement, which Lenzen has characterized as the "Service Agreement" in his Amended Complaint and attached thereto as Exhibit B, shall be referred to herein as the "Service Agreement."

9.     Section 1 of the Service Agreement states, in part, that "Lenzen shall use best efforts to enhance the business and increase sales" and "shall use best efforts to . . . develop a customer base for trial exhibits."

10.     Section 3 of the Service Agreement states, in part, that Lenzen shall "devote his full business time, energies and talents to his position with the Company."

11.     Section 4(c) of the Service Agreement sets forth the commission structure under

which Lenzen would be paid.  Under Section 4(c), Lenzen would be paid a commission as

follows:

> (i)     20% of the Revenue in the Territory on up to 250 pages in a Month.
>
> (ii)    25% of the Revenue in the Territory attributable to pages above 250 up to 350 pages in a Month.
>
> (iii)   30% of the Revenue in the Territory attributable to pages above 351 in a Month.

12.     Section 6 of the Service Agreement states:

> Upon his termination of engagement with the Company for any reason, Lenzen shall promptly return to the Company any keys, passes, confidential documents or material, or other property belonging to the Company, and to return all writings, files, records, correspondence, notebooks, notes and other documents and things (including any copies thereof) containing confidential information or relating to the business or proposed business of the company or its subsidiaries or affiliates or containing any trade secrets relating to the company or its subsidiaries or affiliates.

13.     Section 18 of the Service Agreement states that it "constitutes the entire

agreement between the parties concerning the subject matter hereof an supersedes all prior and

contemporaneous agreements, if any, between the parties relating to the subject matter hereof,

including the Letter Agreement, dated May 20, 2003."

14.     Section 15 of the Service Agreement states:

> This Agreement may not be modified, amended or terminated except in writing, signed by both parties.  Either party may waive the other party's compliance with any provision of this Agreement, but such waiver shall be effective only if set forth in writing by both parties.  Any waiver of a particular provision in any one or more instance shall not operate as a waiver of any subsequent compliance or failure to comply with that or any provision of this Agreement.  Furthermore, any party's failure to exercise or delay in exercising any right, remedy or power  hereunder, in one or more instances, shall not preclude or waive any subsequent exercise of such right, remedy or power.

15.     On June 16, 2003, Lenzen executed an addendum to the Service Agreement which contained in Section 3 of that addendum a promise by Lenzen that "all client development activities have been, and shall be, exclusively in the name of and for the benefit of the Company." A copy of this addendum is attached to Lenzen's Amended Complaint as Exhibit D.

16.     The Service Agreement was originally scheduled to expire on December 1, 2005. On March 15, 2005, Lenzen executed an amendment to the Service Agreement that the term of the Service Agreement would be extended from December 1, 2005 to November 20, 2007. A copy of this amendment is attached to Lenzen's Amended Complaint as Exhibit E.

17.      Lenzen's relationship with Legal Advantage commenced on or about May 16, 2005, following the closing of the asset purchase agreement between Legal Advantage and LAS, Inc.

18.     On or about October 30, 2007, Lenzen informed Legal Advantage that he was terminating his relationship with Legal Advantage, effective immediately.

19.     On October 31, 2007, Lenzen filed a Complaint in the United States District Court for the Northern District of Illinois, alleging among other things, breach of contract, violations of state law, reformation of contract, and a declaratory judgment that the post-termination restrictive covenants contained in the Service Agreement are unenforceable.

20.     On November 19, 2007, Lenzen filed an Amended Complaint in the United States District Court for the Northern District of Illinois.

## COUNT I -- UNJUST ENRICHMENT

21.     The allegations of Paragraphs 1-20 of this Counterclaim are restated and incorporated into this Count I by reference.

22.     In or around June 2005, shortly after Legal Advantage closed the asset purchase agreement with LAS, Inc., Legal Advantage became aware of the fact that LAS, Inc. had been

paying Lenzen commissions at a rate of 30% of gross revenues collected in Lenzen's territory, which was contrary to the terms of the written Service Agreement.

23.    Legal Advantage approached Lenzen regarding the error in payment, and informed Lenzen that it intended to pay him according to the written terms of the Service Agreement, meaning that Lenzen would be paid 20% of the gross revenues on up to 250 pages in a month, 25% of the gross revenues for pages above 250 up to 350 pages in a month, and 30% of the gross revenues for pages above 351 pages in a month.

24.    Lenzen demanded that Legal Advantage pay Lenzen commissions at the higher rate of 30% of the gross revenues for all pages if Lenzen sold in excess of 350 pages in a month.

25.    Lenzen contended that, despite the written language of the Service Agreement, this was the true agreement reached between himself and LAS, Inc.

26.    Although the Service Agreement clearly states that any modification or amendment to the Service Agreement must be in writing, there is no written amendment or modification to the Service Agreement affecting the calculation of commission for Lenzen.

27.    Legal Advantage informed Lenzen that its position was that the written terms of the Service Agreement governed.  Legal Advantage agreed to continue to pay Lenzen 30% of the gross revenues on all pages if Lenzen sold more than 350 pages in a month, with the express understanding that this increased payment would not be considered payment for earned commissions, that Lenzen would eventually repay Legal Advantage the excess which Legal Advantage was paying him above what was required under the Service Agreement, and that the parties would make an attempt to negotiate a method by which this repayment would be made.

28.    Over the next approximately two years and four months, Legal Advantage and Lenzen held periodic discussions over the repayment of the excess payments made to Lenzen, but were never able to reach an accord on this subject.

29.    On more than one occasion, when Legal Advantage attempted to broach the subject of repayment, Lenzen made threats to withhold order information from Legal Advantage relating to customer orders, essentially threatening Legal Advantage's business unless it postponed any discussion over repayment of the excess compensation erroneously paid to Lenzen.

30.    At no time did Legal Advantage ever waive, either orally or in writing, its right to recover these overpayments or change its position that the payments were above and beyond payments on commissions which Lenzen had earned.

31.    Under the provisions of Section 15 of the Service Agreement, in order for Legal Advantage to waive its right to contest the calculation of commissions, such a waiver would have to be set forth in writing by both parties.

32.    In addition to overpayments made by Legal Advantage to Lenzen based upon Lenzen's unsupportable demand that Legal Advantage pay him an amount equal to 30% of gross revenues on sales if he sold more than 350 pages in a month, Lenzen was erroneously paid commissions on sales for which the client never paid Legal Advantage.

33.    Legal Advantage's policy and practice is that its salesmen do not receive commissions for sales where the client does not pay Legal Advantage, and that if a salesman receives commissions for such a sale, the amount of commission paid to that salesman for an unrecoverable sale is either deducted from that salesman's future commissions or the salesman pays back the amount of the unearned commission directly to Legal Advantage.

34.    In or about August 2007, Legal Advantage informed Lenzen that Lenzen had been paid commissions on $40,769 of gross revenues on sales with regard to which Legal Advantage had never received payment from the client.

35.    Legal Advantage informed Lenzen that Lenzen was required to obtain payments from these delinquent clients or to repay the unearned commissions back to Legal Advantage, either directly or through a correction in his future commission payments.

36.    At the time he terminated the Service Agreement in October 2007, Lenzen neither obtained payment from the delinquent clients nor paid Legal Advantage back for the unearned commissions he was paid on delinquent accounts.

37.    From June 2005 through June 2007, Legal Advantage paid Lenzen $69,909 in excess of what Lenzen should have been paid pursuant to the written terms of the Service Agreement.

38.    In addition, from June 2005 through June 2007, Legal Advantage paid Lenzen approximately $12,230 in commissions on sales to which Lenzen was not entitled to receive due to Legal Advantage not receiving payments for those sales.

39.    Lenzen benefited from his retention of these excess payments and unearned commissions.

40.    The excess payments and unearned commissions exceed the amount Lenzen was entitled to receive under the Service Agreement by more than $40,000.

41.    Lenzen retained the excess payments and unearned commissions to the detriment of Legal Advantage.

42.    It is inequitable for Lenzen to retain the excess payments and unearned commissions at the expense of Legal Advantage.

43.     As a result of the commissions, Lenzen has been unjustly enriched in amount exceeding $40,000.

44.     As a result of the overpayment of commissions, Legal Advantage has been damaged in an amount exceeding $40,000.

## COUNT II -- BREACH OF CONTRACT

45.     The allegations of Paragraphs 1-43 of this Counterclaim are restated and incorporated into this Count 44 by reference.

46.     One or more agreements exist between Lenzen and Legal Advantage.

47.     At all times relevant hereto, Legal Advantage materially performed all of the obligations required under the Service Agreement and any amendments thereto.

48.     Pursuant to the Service Agreement, during his relationship with Legal Advantage, Lenzen was obligated to use his best efforts to enhance the business of Legal Advantage.

49.     Pursuant to the addendum to the Service Agreement, which Lenzen signed on June 16, 2003, Lenzen agreed that "all client development activities have been, and shall be, exclusively in the name of and for the benefit of" Legal Advantage.

50.     Upon information and belief, during his relationship with Legal Advantage, Lenzen routinely represented to clients of Legal Advantage that he was acting alone in servicing client needs, and was obtaining no assistance from anyone else associated with Legal Advantage.

51.     Such representations undermined the business of Legal Advantage, and were in violation of Lenzen's obligations under his written agreements.

52.     Under Section 6 of the Service Agreement, following his termination, Lenzen was required to return to Legal Advantage any keys, passes, confidential documents or material, or other property belonging to the Company, and to return all writings, files, records, correspondence, notebooks, notes and other documents and things (including any copies thereof)

containing confidential information or relating to the business or proposed business of Legal Advantage or its subsidiaries or affiliates or containing any trade secrets relating to Legal Advantage or its subsidiaries or affiliates.

53.     Upon information and belief, Lenzen has not returned to Legal Advantage and has retained in his possession a substantial amount of company property and other documents relating to the business of Legal Advantage, including but not limited to work product, client files, correspondence, invoices and other materials, both in electronic form and in physical form, which relate to the business of Legal Advantage.

54.     Lenzen's retention of these materials is a breach of the Service Agreement.

55.     Pursuant to the amendment to the Service Agreement, which Lenzen signed on March 15, 2005, Lenzen's relationship with Legal Advantage was to continue until November 20, 2007.

56.     The Service Agreement does not contain any provision allowing Lenzen to terminate the Service Agreement prior to November 20, 2007.

57.     By terminating the Service Agreement on October 30, 2007 and not continuing to meet his obligations under the Service Agreement through November 20, 2007, Lenzen breached the terms of the Service Agreement.

58.     Legal Advantage has been harmed due to Lenzen's breaches of the Service Agreement.

## **JURY DEMAND**

Counterclaim Plaintiff hereby demands a trial by jury for all matters in the Counterclaim.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Legal Advantage, LLC respectfully requests that this Court enter judgment against Counterclaim Defendant Nicholas J. Lenzen as follows and grant the following relief:

A.      That Lenzen be held to have been unjustly enriched in an amount in excess of $40,000 by receiving and retaining excess payments and unearned commissions to which Lenzen was not entitled to receive;

B.      That Lenzen be directed to pay Legal Advantage compensatory, incidental and consequential damages as a result of his unjust enrichment;

C.      That Lenzen be held to have breached the Service Agreement and the relevant addendums and amendments to the Service Agreement, and that as a result, Legal Advantage has suffered damages;

D.      That Lenzen be directed to return to Legal Advantage all keys, passes, confidential documents or material, or other property belonging to Legal Advantage, and to return all writings, files, records, correspondence, notebooks, notes and other documents and things (including any copies thereof) containing confidential information or relating to the business or proposed business of Legal Advantage or its subsidiaries or affiliates or containing any trade secrets relating to Legal Advantage or its subsidiaries or affiliates;

E.      That Lenzen be directed to compensate Legal Advantage for all compensatory, incidental and consequential damages suffered by Legal Advantage as a result of Lenzen's breaches of the Service Agreement;

F.      That Legal Advantage be awarded reasonable attorney's fees;

G.      That Legal Advantage be awarded all costs and both pre-judgment and post-judgment interest on its claims;

H.      That Legal Advantage be awarded such other and further relief as this Court

deems just and proper.

Dated:        December 10, 2007                Respectfully Submitted,

                                               LEGAL ADVANTAGE, LLC


                                               By:    /s/ *Darren M. Mungerson*_____
                                                       Darren M. Mungerson
                                                       One of Its Attorneys

Darren M. Mungerson (ARDC No. 6256434)
JENNER & BLOCK LLP
330 North Wabash
Chicago, Illinois  60611
Phone:  312-222-9350
Fax:  312-840-7288