IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nicholas J. Lenzen, | ) | |
| Plaintiff | ) | Civil Action No.  07 C 6154 |
| v. | ) | |
| | ) | U.S. District Judge Filip |
| Legal Advantage, LLC | ) | |
| and | ) | Magistrate Judge Denlow |
| Legal Advantage Services, Inc. | ) | |
| Defendants. | ) | Jury Trial Demanded |

## AMENDED COMPLAINT

Plaintiff Nicholas J. Lenzen, by and through its attorneys, complains of Defendants Legal Advantage, LLC and Legal Advantage Services, Inc., and in support thereof alleges as follows:

## THE PARTIES

1.     Plaintiff Nicholas J. Lenzen (hereinafter "Lenzen") is an individual residing at 324 Oak Meadow Court, Schaumburg, Illinois, 60193, which is located in Cook County, Illinois.

2.     Lenzen is a citizen of Illinois.

3.     Upon information and belief, Defendant Legal Advantage, LLC (hereinafter "LA, LLC") is a limited liability company formed and existing under the laws of Florida,



EXHIBIT

1

and has a principal place of business located at 4330 East West Highway, Suite 304, Bethesda, Maryland  20814.

4.      Upon information and belief, the members of LA, LLC are individuals named Mirza Baig and Akbar Sharfi.  Upon information and belief, Mirza Baig resides at 6812 Delaware Street, Chevy Chase, Maryland  20815, and thus Baig is a citizen of Maryland.  Upon information and belief, Akbar Sharfi resides at 7210 Pioneer Lakes Circle, West Palm Beach, Florida  33413, and thus Sharfi is a citizen of Florida.  LA, LLC is a citizen of Florida and Maryland.  LA, LLC is not a citizen of Illinois.  Upon representations by Defendant LA, LLC through counsel, no members of LA, LLC are citizens of Illinois as of the date of the filing of the Complaint, October 31, 2007.

5.      Upon information and belief, Defendant Legal Advantage Services, Inc. (hereinafter "LAS, Inc.") is a corporation formed and existing under the laws of California and has a principal place of business located at 11600 Washington Place, Suite 105, Los Angeles, California  90066.

6.      LAS, Inc. is a citizen of California.  LAS, Inc. is not a citizen of Illinois.

7.      Upon information and belief, Defendant LA, LLC is a successor in interest to Defendant LAS Inc.

8.      Upon information and belief, Defendant LA, LLC purchased, acquired, merged with, or otherwise succeeded in interest to Defendant LAS, Inc.

## JURISDICTION AND VENUE

9.      This is a civil action for breach of contract, statutory violations of Illinois law, injunctive relief, and damages.  This action arises in part under common law

breach of contract and Illinois state statutes.  This action also arises in part under 28 U.S.C. §2201 for the purpose of determining questions of actual controversy. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Jurisdiction is also conferred in part based upon 28 U.S.C. § 1367.

10.    Upon information and belief, Defendants are and have in the past conducted business in Illinois, and in this Judicial District as discussed in more detail herein.  Moreover, Defendant LA, LLC maintains an office and regularly transacts business in Illinois.  Defendant LAS, Inc. has in the past maintained an office and regularly transacted business in Illinois.  The contracts referred to herein were executed and performed in Illinois.  Requiring Defendants to respond to this action will not violate due process. Defendants are subject to the personal jurisdiction of this Court and are amenable to service of process pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209, and Rules 4(e) and 4(h) of the Federal Rules of Civil Procedure.

11.    Venue lies in this district pursuant to 28 U.S.C. §§ 1391(a) and (c).

## **GENERAL ALLEGATIONS**

12.    Plaintiff Lenzen is an independent contractor and salesperson engaged in the business of selling, among other things, legal support services including patent graphic and drafting services.  Lenzen has engaged in such services for the past seven years.

13.     Defendant LAS, Inc. is currently and/or was in the past in the business of providing legal support services, including patent graphic and drafting services to a variety of customers including law firms, corporations, and other entities.

14.     Defendant LA, LLC is and/or was in the past in the business of providing legal support services, including patent graphic and drafting services to a variety of customers including law firms, corporations, and other entities.

15.     In late 2002 and the beginning of 2003, Defendant LAS, Inc. engaged in discussions to retain and contract with Plaintiff Lenzen for a business relationship in which Lenzen would act as a sales person for LAS, Inc. relating to selling legal support services including patent graphic and drafting services.   After discussions and negotiations, LAS, Inc. and Lenzen reached an agreement in principal, which was memorialized in a Letter of Intent dated May 20, 2003, a copy of which is attached hereto as Exhibit A.  Defendant LAS, Inc. drafted, accepted and executed the Letter of Intent.

16.     On or about May 26, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a Service Agreement engaged Lenzen as an independent contractor salesperson for selling legal support services provided by LAS, Inc. to various customers.   A copy of the Service Agreement is attached hereto as Exhibit B. Defendant LAS, Inc. drafted, accepted and executed the Service Agreement.

17.     On or about June 9, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a First Amendment to the Service Agreement, which modified and clarified certain terms and conditions therein.  A copy of the First Amendment is attached hereto

as Exhibit C.  Defendant LAS, Inc. drafted, accepted and executed the First Amendment.

18.    On or about June 16, 2003, Defendant LAS, Inc. and Plaintiff Lenzen executed a Second Amendment to the Service Agreement, which modified and clarified certain terms and conditions therein.  A copy of the Second Amendment is attached hereto as Exhibit D.  Defendant LAS, Inc. drafted, accepted and executed the Second Amendment.

19.    On or about February 15, 2005, Defendant LAS, Inc. and Plaintiff Lenzen executed a Third Amendment to the Service Agreement, which modified certain terms and conditions therein.  A copy of the Third Amendment is attached hereto as Exhibit E. Defendant LAS, Inc. drafted, accepted and executed the Third Amendment.

20.    The Service Agreement and the Amendments thereto are governed by Illinois law.

21.    Upon information and belief, Defendant LA, LLC was formed and incorporated on or about April 19, 2005.

22.    Upon information and belief, in or around April 2005, Defendant LA, LLC succeeded in interest to Defendant LAS, Inc.

23.    As the successor in interest to LAS, Inc., Defendant LA, LLC assumed all of the debts, liability, contracts, and other obligations of Defendant LAS, Inc.

## COUNT ONE

## BREACH OF CONTRACT

24.    Plaintiff hereby incorporates paragraphs 1 through 23 of the Complaint, as if fully set forth herein in their entirety.

25.    One or more agreements exist between Plaintiff Lenzen and Defendants LAS, Inc. and LA, LLC, including the Service Agreement and the Amendments thereto.

26.    At all times relevant hereto, Plaintiff Lenzen performed all of the obligations required of him under the Service Agreement and the Amendments thereto.

27.    Pursuant to the Service Agreement and the Amendments, Defendant LAS, Inc. and its successor Defendant LA, LLC were obligated by the terms therein to perform certain duties and make certain payments as outlined therein.

28.    Defendants LAS, Inc. and LA, LLC, have breached the Service Agreement and the Amendments thereto by failing to perform many of their duties and obligations there under.  Such breaches include, but are not limited to, failing to make commission payments due under the contract, failing to provide benefits owed to Lenzen under the contract (leased company car, paid vacations, stock option plan, retirement plan, etc.), failing to make timely base salary payments under the contract, failing to pay expenses due Lenzen under the contract, failing to issue stock to Lenzen, failing to compensate Lenzen for his stock in LAS, Inc. when it was sold and/or transferred to LA, LLC, and other failures.

29.    As a direct and proximate result of breaches by Defendants LAS, Inc. and LA, LLC, Plaintiff Lenzen has sustained damages.

## COUNT TWO

### VIOLATIONS OF ILLINOIS SALES REPRESENTATIVE ACT

30.    Plaintiff hereby incorporates paragraph 1 through 29 of the Complaint, as if fully set forth herein in their entirety.

31.    From 2003 through the present, Plaintiff Lenzen was engaged as a salesperson by Defendant LAS, Inc. and its successor in interest, Defendant LA, LLC.

32.    During the course of that relationship, Lenzen was a sales representative as defined in 820 ILCS 120/1(4).

33.    During the course of that relationship, Defendants LAS, Inc. and LA, LLC were principals as defined in 820 ILCS 120/1(3).

34.    Pursuant to the one or more agreements between Plaintiff Lenzen and Defendants LAS, Inc. and LA, LLC, Lenzen performed and provided sales services to Defendants LAS, Inc. and LA, LLC.  In exchange therefore, Defendants LAS, Inc. and LA, LLC were required to make certain commission payments to Plaintiff Lenzen.

35.    The commission payments due Lenzen fall within the definition of 820 ILCS 120/1(1).

36.    Defendants LAS, Inc. and LA, LLC failed to make commission payments due and owing to Plaintiff Lenzen in derogation of their obligations under the relevant agreements.

37.    The failure by Defendants LAS, Inc. and LA, LLC to make certain commission payments to Plaintiff Lenzen constitute violations of the Illinois Sales Representative Act, 820 ILCS 120/3.

## COUNT THREE

## DECLARATORY JUDGMENT THAT LENZEN HAS IMPROPERLY NOT BEEN ISSUED STOCK IN LAS, INC., THAT LENZEN OWNS THREE PERCENT OF OUTSTANDING STOCK OF LAS, INC. AND THAT LENZEN OWNS A PROPORTIONATE SHARE OF OWNERSHIP (THREE PERCENT) IN LA, LLC.

38.    Plaintiff hereby incorporates paragraph 1 through 37 of the Complaint, as if fully set forth herein in their entirety.

39.    In accordance with the Third Amendment (Exhibit E) to the Service Agreement (Exhibit B), Lenzen was to be issued certain stock and associated ownership interest in Defendant LAS, Inc.

40.    No stock in LAS, Inc. was ever issued to Lenzen.

41.    Lenzen has made repeated demands to LAS, Inc. and LA, LLC that such stock be issued.

42.    No payment has ever been made to Lenzen for his ownership interest in LAS, Inc.

43.    No payment has ever been made to Lenzen for his stock in LAS, Inc.

44.    Lenzen never sold, transferred, assigned or relinquished his ownership interest in Defendant LAS, Inc.

45.    In or around April 2005, LAS, Inc. was purportedly sold, transferred, and/or merged with Defendant LA, LLC.

46.    At such time, and at all times thereafter, Lenzen's ownership interest in LAS, Inc. was never purchased.

47.    As such, Lenzen retains ownership of his ownership interest in LAS, Inc. and the associated proportionate share of ownership in its successor LA, LLC.

48.    Lenzen is entitled to a declaratory judgment that he is and was an owner of three percent of all outstanding stock in LAS, Inc., and that as a result of such stock and attendant ownership rights never having been purchased from him, Lenzen is a three-percent owner of LA, LLC.

## COUNT FOUR

### REFORMATION OF CONTRACT DUE TO MUTUAL MISTAKE

49.    Plaintiff hereby incorporates paragraph 1 through 48 of the Complaint, as if fully set forth herein in their entirety.

50.    In contracting to retain Lenzen's services, LAS, Inc. and Lenzen negotiated and came to an agreement on a number of matters relating to the relationship between them.

51.    Among such matters, Lenzen and LAS, Inc. negotiated and agreed upon a commission structure. The actual agreement between Lenzen and LAS, Inc. was that if Lenzen generated monthly sales of 250 sheets of drawings or less, he would be paid a commission of 20% of the monthly revenue received from such sales (less Lenzen's monthly base salary of $4,166.67); if Lenzen generated monthly sales between 251 and 350 sheets of drawings, he would be paid a commission of 25% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67); and if Lenzen generated

9

monthly sales greater than 350 sheets of drawings, he would be paid a commission of 30% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67).

52.    This agreement as to sales commissions is reflected in paragraphs 4(A) and 4(B) of the Letter of Intent (Exhibit A).

53.    Lenzen and LAS, Inc. executed the Service Agreement (Exhibit B).    In doing so, a mistake was made in the drafting of the Service Agreement as it relates to the commission structure to be paid to Lenzen.    As a result of the mistake, the commission structure expressed in paragraph 4(c) of the Service Agreement is in error and does not reflect the true agreement of the parties.

54.    From the date of execution of the Service Agreement to the present, the parties have operated in accordance with the correct agreed upon commission structure, and not upon the mistaken memorialization of the commission structure in paragraph 4(c) of the Service Agreement.    As such, in months when Lenzen generated sales in excess of 350 sheets of drawings, Defendants LAS, Inc. and LA, LLC paid to Lenzen commissions of 30% of the gross monthly revenue received from such sales, less Lenzen's monthly base salary of $4,166.67.

55.    Such payments evidence Defendants compliance with the true agreed upon commission structure which was mistakenly memorialized in the Service Agreement.

56.    The parties operated under the true agreed upon commission structure for over four (4) years, and never operated under the mistakenly memorialized commission structure in the Service Agreement.

57.    Despite clear evidence that the parties have operated under an incorrectly memorialized understanding as to commission to be paid to Lenzen, Defendant LA, LLC has recently indicated that the commissions paid to Lenzen in the past have been overpayments, that such overpayments were made erroneously, and that the language of the Service Agreement is the commission structure that should be followed. Moreover, Defendant LA, LLC has threatened Plaintiff Lenzen with actions to recover what they claim to be overpayments.  Thus, an actual controversy exists as to the mistake of fact described herein and embodied in paragraph 4(c) of the Service Agreement.

58.    As a result of the mistake, paragraph 4(c) of the Service Agreement contains an incorrect and mistaken expression of the parties true agreement as to commissions to be paid to Lenzen, and should be reformed so as to indicate and express the parties true agreement as to commission structure.

## COUNT FIVE

## DECLARATORY JUDGMENT OF CORRECT APPLICABLE COMMISSION RATE

59.    Plaintiff hereby incorporates paragraph 1 through 58 of the Complaint, as if fully set forth herein in their entirety.

60.    As a result of the mistake in the Service Agreement, the commission rate expressed in paragraph 4(c) therein is incorrect.

61.    The actual agreement between Lenzen and LAS, Inc. was that if Lenzen generated monthly sales of 250 sheets of drawings or less, he would be paid a commission of 20% of the monthly revenue received from such sales (less Lenzen's

monthly base salary of $4,166.67); if Lenzen generated monthly sales between 251 and 350 sheets of drawings, he would be paid a commission of 25% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67); and if Lenzen generated monthly sales greater than 350 sheets of drawings, he would be paid a commission of 30% of monthly revenue received (less Lenzen's monthly base salary of $4,166.67).

62.     An actual controversy exists between Lenzen and Defendant LA, LLC regarding the correct commission to be applied under the Service Agreement, and the mistake memorialized in paragraph 4(c) therein.

63.     Lenzen is entitled to a declaratory judgment that the agreement expressed in paragraph 61 is the true agreement between the parties as to commissions to be paid to Lenzen, and that all such commissions remaining under the Service Agreement be paid in accordance with such commission structure.

## COUNT SIX

## DECLARATORY JUDGMENT THAT NON-COMPETITION CLAUSE IN SERVICE AGREEMENT IS UNENFORCEABLE

64.     Plaintiff hereby incorporates paragraph 1 through 63 of the Complaint, as if fully set forth herein in their entirety.

65.     Lenzen and LAS, Inc. entered into the Service Agreement (Exhibit B) and the Amendments thereto (Exhibits C, D, and E) on the dates aforementioned.

66.     As a result of the multiple breaches of the Sales Agreement and the Amendments thereto by Defendant LAS, Inc. and its successor LA, LLC, the non-competition clause in paragraph 7 of the Service Agreement is void and unenforceable.

67.    The non-competition clause contained in paragraph 7 of the Service Agreement is vague, overly broad, an improper restraint on trade, and violates Illinois public policy.

68.    As a result, such non-competition clause is void and unenforceable.

69.    Lenzen is entitled to an order declaring that the non-competition clause in the Service Agreement and Amendment thereto is void and unenforceable.

70.    Despite the fact that the non-competition clauses in the Service Agreement and Amendment thereto are void and unenforceable, Defendants have incorrectly made multiple statements, threats, and comments to Lenzen that the non-competition clauses remain enforceable.

71.    Upon information and belief, Defendants LAS, Inc. and LA, LLC have in the past and will in the future continue to make comments to third parties that Lenzen is under certain obligations pursuant to the non-competition clauses, when in fact, Lenzen is not.

72.    As such, an actual controversy exists between the parties regarding the enforceability of the non-competition clause of the Service Agreement.

73.    Lenzen is entitled to an order declaring that the Defendants and their respective officers, members, employees, agents, servants, and attorneys, are prohibited from making any claims or allegations to third parties that Plaintiff Lenzen is prohibited from performing sales services pursuant to the non-competition clauses in the Service Agreement and the Amendment thereto.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all matters in the Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nicholas J. Lenzen prays for judgment against Defendant Legal Advantage, LLC and Defendant Legal Advantage Services, Inc., jointly and severally, as follows and for the following relief:

A.    That Defendants LAS, Inc. and LA, LLC be held to have breached the Service Agreement and the Amendments thereto, and that as a result of such breaches, Plaintiff Lenzen has suffered damages.

B.    That Defendants LAS, Inc. and LA, LLC be directed to fully compensate Plaintiff Lenzen for all damages attributable to their breaches of the Service Agreement and the Amendments thereto in an amount according to proof at trial, as well as pre- and post-judgment interest.

C.    That Defendants LAS, Inc. and LA, LLC be held to have violated the Illinois Compensation Act, 820 ILCS 120/0.01 *et. seq.*, in their failure to timely and appropriately pay commissions due to Plaintiff Lenzen.

D.    That Defendants LAS, Inc. and LA, LLC be directed to fully compensate Plaintiff Lenzen for all outstanding unpaid commissions pursuant to 820 ILCS 120/2–3, along with pre- and post-judgment interest.

E.    That all unpaid commissions due to Plaintiff Lenzen and other damages be trebled in accordance with 820 ILCS 120/2-3.

F.    That Plaintiff Lenzen be awarded his attorneys' fees in accordance with 820 ILCS 120/3.

G.    That Plaintiff be awarded damages in an amount proved at trial, which upon information and belief, exceeds $200,000 exclusive of interest, costs, and attorneys fees.

H.    That Plaintiff be provided a Declaration of Rights, pursuant to 28 U.S.C. 2201, that Lenzen is and was an owner of three percent of all outstanding stock in LAS, Inc., and that as a result of such stock and attendant ownership rights never having been purchased from him, Lenzen is a three-percent owner of LA, LLC.

I.    That Plaintiff be provided a Declaration of Rights, pursuant to 28 U.S.C. 2201, that the non-competition clauses in the Service Agreement and Amendment thereto are null, void, and unenforceable.

J.    That Plaintiff be entitled to an injunction against Defendants LAS, Inc. and LA, LLC, and their respective officers, members, employees, agents, servants, and attorneys, which prohibits them from making any claims or allegations to third parties that Plaintiff Lenzen is prohibited from performing sales services pursuant to the non-competition clauses in the Service Agreement and the Amendment thereto.

K.    That Plaintiff be provided a Declaration of Rights, pursuant to 28 U.S.C. 2201, that the Service Agreement contains certain mutual mistakes of fact relating to the parties agreement as to commission to be paid to Lenzen, that such mutual mistakes of fact be corrected to reflect the parties actual agreement, and that the Service Agreement and Amendments thereto be reformed accordingly.

L.      That Plaintiff be provided a Declaration of Rights, pursuant to 28 U.S.C. 2201, that the agreement expressed in the paragraph 61 is the true agreement between the parties as to commissions to be paid to Lenzen, and that all such commissions remaining under the Service Agreement be paid in accordance with such commission structure.

M.      That Plaintiff be awarded reasonable attorney's fees.

N.      That Plaintiff be awarded the costs of suit, and an assessment of interest (pre-judgment and post-judgment).

O.      That Plaintiff have such other, further, and different relief as the court deems proper under the circumstances.


Dated: November 19, 2007              Respectfully Submitted, on behalf of
                                      Plaintiff Nicholas J. Lenzen



                                      By:   /s/ Vladimir I. Arezina_____
                                      Vladimir I. Arezina,
                                      One of Its Attorneys

Plaintiff's Attorneys:
Vladimir I. Arezina
Carmen B. Patti
Scot R. Hewitt
Patti, Hewitt & Arezina LLC
One North LaSalle Street, Suite 4400
Chicago, IL 60602
Phone: 312-346-2800
Fax: 312-346-2810

## CERTIFICATE OF SERVICE

Vladimir I. Arezina, an attorney, certifies that on Monday, November 19, 2007, he caused the foregoing Amended Complaint to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

/s/ Vladimir I. Arezina
Vladimir I. Arezina (6276348)
Patti, Hewitt & Arezina LLC
One North LaSalle Street, Suite 4400
Chicago, IL 60602
Phone: 312-346-2800
Fax: 312-346-2810

<u>Letter of Intent</u>

1.    This is a 30 month LOI between Legal Advantage Services, Inc. and Nick Lenzen . The start date is May 20, 2003.

2.    Nick Lenzen agrees to assume the position of Director of Sales, Midwestern Division for Legal Advantage Services, Inc.  This title shall be upgraded to Vice President after 6 months if Lenzen maintains a minimum of 250 pages a month.

3.    Legal Advantage shall immediately provide the following:
      A.  $2000 signing bonus.
      B.  800 number that will be 24x7, answering with Mr. Lenzen's office.
      C.  Local fax number.

4.    Compensation:

      A.  Base of $50,000 a year, payable in 12 increments, on the 15th of each month.  This base is guaranteed for the 30 month term of this agreement, and shall be paid even if Legal Advantage decides to terminate Mr. Lenzen prematurely.
      B.  Commissions of 20% on the total revenue in Lenzen's territory for a volume of 0 to 250 pages per 30 day period.  Commissions shall be increased to 25%, if Lenzen's sales are between 251 and 350 pages per 30 day period.  Commission shall be increased to 30% if Lenzen's sales are over 351 pages in any 30 day period.  Commissions shall only be paid to the extent they exceed the $50,000 a year base.
      C.  Expense reimbursement (cell phone and any other direct expenses will be reimbursed 100%).

5.    Benefits:

      A.  A $200 medical/dental stipend shall be paid per month on the 15th of each month.
      B.  401K plan participation.
      C.  ESOP plan participation at the same level as other managers.
      D.  3 weeks paid vacation.
      E.  Car lease payments up to $400 a month if Lenzen's numbers exceed 450 pages for 2 months in one quarter.

6.    Territories:

      Lenzen shall have as exclusive territories Wisconsin, Illinois, Missouri and Indiana.



EXHIBIT

A

7.  Lenzen represents that he has no current restrictive covenants or any restrictions that would prevent him from entering into this agreement or providing any services for the company, or otherwise impair or interfere with the company's rights under the agreement or the performance of his duties

8.  Lenzen shall use best efforts to deliver a minimum of 200 pages per month. Lenzen guarantees a minimum of 115 pages per month.

9.  Lenzen shall devote his entire business time to the performance of his duties hereunder, meaning a full work week.

10. Lenzen shall use best efforts to enhance the business and increase sales.

11. Lenzen shall use best efforts to represent the company's interest and shall conduct himself in a highly professional manner at all times.

12. So long as Lenzen is compensated pursuant to this agreement, he shall remain fully committed to the objectives of the company and pursue no other competing commercial interests, including but not limited to rendering consulting or sales services or soliciting business in connection patent graphics or litigation support. Lenzen shall comply with the policies of the company that are communicated to him. Lenzen shall notify the company of any offer received for Lenzen's services from a third party.

13. Lenzen shall not compete with the company in the patent design, trademark design or trial exhibits business during the term of the agreement and for a period of six months after the term of the agreement. If this agreement ends or is terminated for any reason, Lenzen shall not solicit or work for any clients of the company with which Lenzen had contact during the course of this agreement provided that payments hereunder are made to Lenzen.

14. Lenzen shall use best efforts to learn the trial exhibit business and develop a customer base for Trial Exhibits.

15. The work will flow in the following manner:

    A. Lenzen solicits clients.
    B. Clients send in work.
    C. Lenzen is notified and also supplies instructions and clarifications to designers.
    D. First draft must be completed 24 hours prior to client's due date (best efforts). Any revisions must be completed in 48 hours (best efforts). This does not apply to rush jobs.

16.   Lenzen may, at his option, terminate this LOI by 12:00 Noon EST on Thursday, May 22, by written notice and by forfeiting the $1750 by wire transfer, if the following are not met:

   A.  He is able to contact 2 clients to verify quality workmanship. He shall do so in a manner that will not jeopardize the client relationship.

   B.  The company must demonstrate that the company does in fact produce high quality work that is USPTO compliant. This will be done by completing a sample job for Lenzen.

   C.  The company provides proof from Bank of America that its accounts are in good standing, or something to that effect.

16.   Legal Advantage, at is sole option, may terminate this LOI by 12:00 Noon EST on Thursday, May 22, by written notice, by forfeiting the $2000 signing payment.


ACCEPTED AND AGREED:                          Legal Advantage Services, Inc.


_____                     _____
Nick Lenzen

May 26, 2003

Nick Lenzen
324 Oak Meadow Ct.
Schaumburg, Il 60193

Dear Nick:

Legal Advantage Services, Inc. (the "Company") is pleased to provide you (the "Lenzen") with this Agreement regarding engaging you as an independent contractor to act as a Director of Sales for the Company in the for patent graphics, trademark design, trial graphics and other related services (the "Services"). This Agreement shall supersede the Letter of Intent signed between the parties as of May 20, 2003. Until this Agreement is duly executed, the LOI and emails confirming that we are in full agreement shall remain in full force and effect.

1. **Engagement and Duties.** Subject to the terms of this Agreement, the Company hereby agrees to engage Lenzen as its Director of Sales, Midwestern Division, with such authority, power, responsibilities and duties customarily exercised by a person holding such positions in a company of the size and nature of the Company. The "Term" shall be the period beginning on June 1, 2003 and ending December 1, 2005. The Company agrees to upgrade Lenzen to the title of Vice President no later than December 1, 2003 if Lenzen has produced sales of at least 250 pages of patent graphics per each Month (Month shall be from the 1st to the 30th) during the Term up until December 1, 2003. Lenzen's exclusive territories shall be Wisconsin, Illinois, Missouri and Indiana, or as otherwise agreed between the parties (the "Territory") in writing. Lenzen shall use best efforts to enhance the business and increase sales, and to deliver a minimum of 200 pages of patent graphics per month. Lenzen shall guarantee sales of at least 115 billable pages of patent graphics per month. Lenzen shall comply with the policies of the Company that are communicated to him in writing, and shall notify the Company of any offer received for Lenzen's services from a third party. Lenzen acknowledges the importance of confidential treatment of client's patent information and agrees to retain any information in the strictest confidence and in accordance with Company policy. Lenzen shall use best efforts to learn the trial exhibit business and develop a customer base for trial exhibits.

2. **Use of Subsidiary.** Lenzen understands that Patent Intelligence Associates will be a wholly owned subsidiary of Legal Advantage and is being established as a Midwestern regional company for patent drafting and related work. Any business derived through Patent Intelligence Associates, and any rights thereto, are for the sole and exclusive benefit of Legal Advantage.

3. **Performance of Duties.** Lenzen agrees that during the Term, he shall devote his full business time, energies and talents to his position with the Company. The Company shall maintain an 800 number 24x7 for business calls, which shall be answered for Lenzen. The work will flow in the following manner: Lenzen solicits clients. Client's send in work. Lenzen is notified and also supplies instructions and clarifications to designers. First draft must be completed 24 hours prior to client's due date (best efforts). Any revisions must be completed in 48 hours (best efforts). This does not apply to rush jobs.

EXHIBIT
B

4. <u>Compensation</u>. The Company shall compensate Lenzen for his services as follows:

(a) <u>Base Salary</u>. Lenzen shall receive a Base Salary at an annualized rate of Fifty Thousand Dollars ($50,000.00) per year payable in equal monthly installments, on the 1st of each month, beginning on July 1, 2003. Lenzen is guaranteed to receive at least $50,000.00 so long as he delivers 115 billable pages a month, up to the date of termination, and is not otherwise in material breach of this Agreement. This Base Salary is guaranteed for the Initial Term of this Agreement and shall be paid notwithstanding the termination of Lenzen or this Agreement for any reason other than pursuant to 5a or 5b. Subject to the guaranteed Base Salary provision above, the parties acknowledge and agree that Lenzen shall be paid on a monthly basis the greater of either the monthly installment of the Base Salary or the amount of any Commission generated by Lenzen for that month.

(b) <u>Bonus</u>. Lenzen shall receive a $2,000 signing bonus. Lenzen acknowledges that this bonus has been paid in connection with the signing of the Letter of Intent.

(c) <u>Commission</u>. Lenzen shall be paid a commission as follows:

(i)     20% of the Revenue in the Territory on up to 250 pages in a Month.
(ii)    25% of the Revenue in the Territory attributable to pages above 250 up to 350 pages in a Month.
(iii)   30% of the Revenue in the Territory attributable to pages above 351 pages in a Month.

No commission shall be paid on Fish & Neave business, which shall be considered a House Account.

(d) <u>Benefits</u>. The Company shall pay a $200 stipend each Month on the 1st (beginning July 1st) which shall be used for medical and/or dental insurance by Lenzen. The Company shall permit Lenzen to contribute to any 401(k) retirement plan maintained by the Company. The Company shall permit Lenzen to participate in any Employee Stock Option Plan implemented by the Company at the same level as other market managers or executives as applicable to Lenzen's written title; or the Company shall contribute the equivalent value of the ESOP plan derived by other similarly situated managers/executives to Lenzen by contract. If Lenzen produces sales of greater than 450 pages for any two Months during any three Month period, the Company shall pay car lease expenses on behalf of Lenzen up to $400 per month for the remainder of the Initial Term. <u>Vacation</u>. Lenzen shall be entitled to three weeks' paid vacation, to be earned on a pro rata basis during the Term.

(e) <u>Expenses</u>. The Company shall reimburse Lenzen for any reasonable business related expenses incurred in accordance with the Company's policies upon presentation of receipts or appropriate records, and shall reimburse Lenzen for business-related cell-phone use.

(f) <u>Relationship between Parties</u>. The parties intend that Lenzen, in performing services, shall act as an independent contractor. Lenzen agrees to conduct himself in a highly

2

professional manner at all times during the performance of his duties, to adhere to all laws and ethical standards applicable to his profession or occupation and perform all duties in a thorough manner consistent with applicable industry standards. Lenzen is not an agent, servant or employee of the Company, and is not entitled to any benefits provided by Company other than as provided herein, including workman's compensation insurance, unemployment insurance, group life insurance or any other fringe benefit. Company and Lenzen acknowledge that Lenzen shall not disclose any trade secrets or confidential information of former employers or companies for which Lenzen served as a sales representative. It is contemplated by the parties that Lenzen shall become a Vice President of the company before the end of 2003 and an employee if the sales targets in this Agreement are achieved in total.

5. **Termination of Engagement.** Lenzen's engagement under this Agreement shall terminate automatically (at the option of Legal Advantage) upon the earliest to occur of the following events:

(a) **Termination in the Event of Death or Disability.** Lenzen's death or disability. Disability shall mean the determination by the Company, that Lenzen is unable to perform the ordinary functions of such Lenzen's position as a result of mental or physical disability.

(b) **Termination for Cause.** The Company's termination of Lenzen's engagement for Cause, after any required notice is provided and any applicable cure period has passed or immediately if no prior notice is required. For purposes of this Agreement, "Cause" means (1) Lenzen competes with the Company or supports a competitor of the Company, or (2) Lenzen having been convicted of a felony crime other than traffic related.

(c) A Material Breach of this Agreement that is not cured by Lenzen within 10 days after he receives written notice of the breach.

6. **Return of Company Property.** Upon his termination of engagement with the Company for any reason, Lenzen shall promptly return to the Company any keys, passes, confidential documents or material, or other property belonging to the Company, and to return all writings, files, records, correspondence, notebooks, notes and other documents and things (including any copies thereof) containing confidential information or relating to the business or proposed business of the Company or its subsidiaries or affiliates or containing any trade secrets relating to the Company or its subsidiaries or affiliates. Lenzen agrees to represent in writing to the Company upon termination of engagement that he has complied with the foregoing provisions of this Section 7.

7. **Noncompetition; non-solicitation.** Subject to Company's performance of the guaranteed payment obligation in Paragraph 4(a) above, during the Term and for a period of six (6) months following termination, Lenzen shall not engage in, render services to, or have an interest in, directly or indirectly, any Competing Business, including, without limitation, as an owner, partner, director, trustee, officer, contractor, consultant, or advisor, provided, however, that Lenzen may, during the period defined above, accept a role with a Competing Business where his entire role is with a business segment or geographic region that does not compete with

3

the Company. For a period of six (6) months following the termination date, Lenzen shall not be permitted to solicit, contact or work with any clients of the Company with whom Lenzen had dealt with during the Term. For purposes of this Agreement, the term "Competing Business" means any person or entity which engages in, owns, operates, or provides patent graphics, trademark illustrations or litigation support graphics of the sort provided by the Company.

8. **Reasonable Restrictions.** Lenzen acknowledges and agrees that the covenants and restrictions set forth in Section 7 are reasonable in scope and duration and are essential to the preservation of the Company's business and proprietary interests, and that the enforcement of such paragraphs will not in any manner preclude Lenzen from becoming gainfully employed and continuing to provide a standard of living for himself and his family of the sort to which he and they have become accustomed. For purposes of Sections 6 and 7, Company shall include the Company's subsidiaries and affiliates.

9. **Survival.** This Agreement shall terminate on December 1, 2005, or sooner upon termination of Lenzen's engagement as provided herein. Notwithstanding the foregoing sentence, Sections 5, 6 and 7 shall survive any termination of this agreement provided the guaranteed salary in section 4(a) is paid.

10. **Lenzen Representations.** Lenzen represents that he is not subject to any current restrictive covenants or any other restrictions that would prevent him from entering into this Agreement or providing any services for the Company, or otherwise impair or interfere with the Company's rights under this Agreement or the performance of his duties. Lenzen represents that he is not currently under any agreement or relationship with any other firm in the patent graphics business.

11. **Remedies.** Lenzen acknowledges and agrees that the Company would be irreparably harmed by any violation of any provision of Sections 6 or 7, and that the Company shall therefore be entitled to, in addition to any other remedies available to it for such violation or threatened violation, obtain an injunction, temporary restraining order, or other equivalent relief restraining Lenzen from any actual or threatened violation of such sections.

12. **Attorney's Fees.** In any action to enforce this Agreement, each party shall pay its own attorney's fees.

13. **Severability.** The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement, and this Agreement will be construed as if such invalid or unenforceable provision were omitted (but only to the extent that such provision cannot be appropriately reformed or modified) Any provision deemed to be overbroad shall be reformed or modified ("blue-penciled" so that it is enforceable to the maximum extent permitted by law.

14. **Notices.** Notices and all other communications provided for in this Agreement shall be in writing and shall be delivered personally or sent by registered or certified mail, return receipt requested, postage prepaid, or prepaid overnight courier or by facsimile (delivery shall be deemed to have been given upon facsimile confirmation) or upon hand delivery to the parties at

4

the addresses set forth below (or such other addresses as shall be specified by the parties by like notice):

> (a) If to the Company:
>
> Legal Advantage Services, Inc.
> 2300 M Street
> Washington, DC 20037
> Attention: John Jones, Esq.
> General Counsel
> Fax: (800) 804-4220
>
> (b) If to Lenzen:
> Nick Lenzen
> 324 Oak Meadow Ct.
> Schaumburg, Il 60193



15. **Amendments; Waivers.** This Agreement may not be modified, amended or terminated except in writing, signed by both parties. Either party may waive the other party's compliance with any provision of this Agreement, but such waiver shall be effective only if set forth in writing by both parties. Any waiver of a particular provision in any one or more instance shall not operate as a waiver of any subsequent compliance or failure to comply with that or any provision of this Agreement. Furthermore, any party's failure to exercise or delay in exercising any right, remedy or power hereunder, in one or more instances, shall not preclude or waive any subsequent exercise of such right, remedy or power.

16. **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Company and its successors and assigns and upon Lenzen and his heirs, executors, legatees and personal representatives. Lenzen shall not assign any of his interest in, or delegate any of his obligations under, this Agreement without the Company's prior written consent.

17. **Applicable Law.** This Agreement shall be governed by the laws of the State of Illinois, without regard to any conflicts of law provision thereof.

18. **Entire Agreement.** Except as otherwise noted herein, this Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and supersedes all prior and contemporaneous agreements, if any, between the parties relating to the subject matter hereof, including the Letter Agreement, dated May 20, 2003.

19. **Counterparts.** This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first written above.

5

LENZEN:

Nick Lenzen

Dated: __6 - 4 - 03__

LEGAL ADVANTAGE SERVICES, INC.

By:

Name: _D. DEEN NASHIM_
Title: MANAGING DIRECTOR

Dated: June 6, 03

6

**Addendum To Agreement Reached On May 26, 2003 Between Nick Lenzen And Legal Advantage Services, Inc.**

The following are clarifications and additions to the attached agreement.

1. Compensation: Lenzen is to receive the $50,000 base only if he delivers a minimum of 115 pages a month. The parties agree that Lenzen is not to receive the $50,000 plus commissions. To the extent the commissions outlined in the annexed Agreement exceed $50,000, commissions shall be paid each month in an amount equal to the excess promptly upon collection of the revenues. The $50,000 base compensation terminates after 30 months and no additional compensation is required to continue the non-competition (or other continuing) provisions of the attached agreement for the additional 6-month non-compete term that immediately follows termination of the attached Agreement, as outlined therein.

2. Independent Contractor Status: The parties agree that Lenzen will be an Independent Contractor until he is converted to an employee in writing and with his consent upon the occurrence of events outlined in the attached Agreement.

3. Confidentiality and Non-Disclosure. During this Agreement, Lenzen may be dealing with information of a confidential nature that is the property of and is used in the course of the business of the Company and its affiliates such as strategies, processes and plans. Lenzen will not disclose to anyone, directly or indirectly, either during the term of this Agreement or at any time thereafter, any such information or use it other than in the course of performing his duties for the Company hereunder.

4. Additional territory compensation. The patent and trademark drawing commission rate will be 15% for clients outside of Wisconsin, Illinois, Missouri and Indiana that Mr. Lenzen is permitted to solicit on behalf of the Company. These territories shall be non-exclusive in which Lenzen must procure preapproval to contact clients to ensure that there are no conflicts with the Company's existing clients or salespeople. The non-competition provisions of the Agreement apply equally and are extended to any territory in which Lenzen solicits clients.

5. Trial Exhibit and Courtroom Graphics' commissions shall be at the rate of 15% on gross sales up to and including $30,000 on gross sales for clients in Wisconsin, Illinois, Missouri and Indiana, and 20% on the portion of any sale that exceeds $30,000. The commission rate will be a flat 12% for trial exhibit and courtroom graphics' clients outside of Wisconsin, Illinois, Missouri and Indiana that Mr. Lenzen is permitted to solicit on behalf of the Company.

ACCEPTED AND AGREED:

LENZEN:

_____  6/9/03
Nick Lenzen          Date

LEGAL ADVANTAGE SERVICES, INC.

By: _____  June 9, 03
Name: _____          Date
Title: VP. pres.

EXHIBIT
C



## Legal Advantage
### INCORPORATED

### 2nd Addendum To Agreement Reached On May 26, 2003
### Between Nick Lenzen And Legal Advantage Services, Inc.

**The** following are clarifications and additions to the agreement (dated may 26, 2003) and **addendum** (dated June 9, 2003) between the parties hereto

1.  Immediately upon receipt of this signed addendum, Legal Advantage Services, Inc. (the "Company") shall pay Nick Lenzen ("Lenzen") the sum of $500.00 as May compensation and an additional $500 to be used as an advance on his expenses incurred on behalf of the Company.

2.  On July 1, 2003, the Company shall pay Lenzen the July 1 fee payment ($4167.00) contemplated by the May 26th Agreement even if the minimum 115 page count is not achieved by Lenzen, so long as all of the other terms and condition of the May 26 Agreement and June 9 addendum are adhered to by Lenzen.

3.  Lenzen represents that he is in full compliance with the May 26 agreement and addendum thereto, and that he continues to use best efforts to generate business for the Company and its subsidiary Patent Intelligence Associates. Lenzen represents that he has no ongoing commercial dealings with former RDK owners or personnel. United Patent, Richard Kirkpatrick, or any other person or entity whose business directly or indirectly competes with the business of the Company. Lenzen represents that all client development activities have been, and shall be, exclusively in the name of and for the benefit of the Company. Lenzen owns the name Chicago Patent Graphics and a corresponding URL, and is no longer actively using either of these but will monitor them in case any work is sent thereto for forwarding to the Company.

4.  Lenzen represents that the Company has met all of its contractual obligations to him up to and including the date of this addendum.

5.  Lenzen represents that the annexed spreadsheet which he has initialed is an accurate representation of the pages to date that the Company may bill clients for.

6.  The parties agree that Melissa Heath is being retained by the Company as an Independent Contractor to assist Lenzen and the Company in sales outside the Territories, as defined in the Agreement.  Lenzen shall use best efforts to ensure that the Agreement provided to Melissa is executed and returned to the Company on June 17, 2003, and that if it is not returned by close of business on June 17, 2003, she will be suspended from representing the Company until her agreement is duly consummated.

**EXHIBIT**
**D**

7.    By way of clarification to the addendum dated June 9, 2003, the parties agree that Lenzen's patent drawing sales outside of Illinois, Missouri, Wisconsin and Indiana shall not be counted towards his minimum 115 page count requirement in the May 26 Agreement. Nor shall such sales be counted towards the Commissions escalation in Paragraph 4C of that Agreement, and will be a fixed 15%.

ACCEPTED AND AGREED:

LENZEN:                                   LEGAL ADVANTAGE SERVICES, INC:

_____  6/16/03                  By: _____
Nick Lenzen          Date                      Name: _____ Date
                                               Title:

# LEGAL ADVANTAGE

February 15, 2005

Nick Lenzen
324 Oak Meadow Court
Schaumburg, Il. 60193

Dear Nick:

Legal Advantage Services, Inc., and its subsidiary Patent Intelligence Associates (collectively, the "Company") is pleased to provide you (the "Contractor") with this AMENDMENT regarding modifying certain terms and conditions of the agreement between you and the Company and any addendums thereto. Unless specifically modified herein, all prior agreements between the Contractor and the Company shall remain intact.

1. Term of Engagement. The "Term" shall be extended to November 20, 2007.

2. Non-competition, Non-solicitation. The length of the non-competition and non-solicitation period shall be extended from 6 months to 9 months.

3. Company Stock. Contractor shall be given grants of the Company's total common stock, in 1% increments, distributed as follows:
   a. 1% Effective Immediately.
   b. 1% on April 15, 2006.
   c. 1% on November 20, 2007.

   Contractor shall be permitted to cash out (sell) his accumulated stock at the same time that the existing sharcholders of the Company sell their shares in a sale of the company. The selling price for Contractor's shares will be based on the same valuation that is given to the existing shareholders of the Company. In case the Company is sold prior to November 20, 2007, Contractor shall be entitled to sell 100% of the shares that he has been granted as of the date of the sale, and only those shares. No other future interest, rights or options shall vest or may be exercised. Contractor agrees that he will support the management of the Company in any effort to sell the Company to private parties or on the public markets (IPO), and, if required or requested to do so. Contractor will vote is shares with the majority shareholders on all issues, or Contractor shall automatically forfeit his shares. In case the Company is not sold as of November 20, 2007, Contractor shall retain all of the granted stock.

4. Management of Jose Magsino. Contractor shall be given a 5% override for managing Jose Magsino on all billable and collected matters Jose generates in 2005, beginning on March 15, 2005. Contractor shall be given a 3% override for 2006 on all billable and collected matters Jose generates in 2006.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date and year first written above.

CONTRACTOR:

Nick Lenzen

Dated: 3-15-05

COMPANY:
LEGAL ADVANTAGE SERVICES, INC./PATENT
INTELLIGENCE ASSOCIATES

By:

Name:  Naseer Hashim
Title:   Managing Director

Dated:

EXHIBIT
E